UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                    No. 4:24-cr-00054-P(1)

MIGUEL RAFAEL RAYOS, JR.,

    Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion to Suppress. ECF No. 18. Having considered the Motion, evidence, arguments of counsel at today's hearing, and applicable law, the Court finds the Motion should be and hereby is **DENIED**.

## BACKGROUND

The North Richland Hills Police Department ("NRHPD") received a medical distress call from a Tarrant County home early in the morning of February 8, 2024. Officers were dispatched. They arrived at the scene around 4:00 a.m., where they found a man ("E.G.") lying unresponsive in a bathroom. E.G. was taken to a local hospital and pronounced dead. Meanwhile, E.G.'s cousins, Defendant Miguel Rayos and his brother H.R., spoke with responding officers. They told the officers the group had been out drinking and had returned to their residence around 2:00 a.m. Shortly thereafter, the brothers discovered E.G. lying on the floor unresponsive. They attempted to rouse him by placing him in a shower. When he didn't wake, Rayos administered CPR and H.R. called 911.

The responding officers documented these reports and relayed them to their supervisors. Later that morning, NRHPD Detective C. Brock applied for a search warrant from Municipal Judge J. Stewart Bass. Judge Bass issued the warrant at 7:24 a.m., prompting officers to return to Rayos's residence. Upon searching the premises, officers discovered drugs, drug paraphernalia, and other signs of drug trafficking. Rayos

now asks the Court to suppress evidence obtained in that search. He argues the warrant authorizing the search was defective, most prominently because (1) it was allegedly lacking in probable cause and (2) it was based on an allegedly "unparticular" affidavit. The Government sees things differently. *First*, the Government contends the search warrant was supported by probable cause. *Second*, the Government says the affidavit in support of the warrant was sufficiently particular vis-à-vis the scene of the incident and the criminal conduct suspected. *Third*, even if the Court doubts the warrant's propriety, the Government says investigating officers relied upon the instrument in good faith.

## LEGAL STANDARD

The Fourth Amendment enshrines "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV, § 1. The Amendment safeguards this right by prohibiting warrants from issuing without probable cause. *See id.* To establish probable cause, a warrant-seeker must furnish an "Oath or affirmation" that "particularly describe[es] the place to be searched, and the persons or things to be seized." *Id.* § 2. A search is unreasonable if it was conducted without a warrant or probable cause. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009). And even if the authorities had a warrant, the search may still be unreasonable if the warrant itself lacked probable cause. *See id.*

Criminal defendants may move to suppress evidence obtained in violation of their Fourth Amendment rights. *See United States v. Leon*, 468 U.S. 897, 922 (1984). If the authorities had a warrant, the movant must prove the search violated his or her rights by a preponderance of the evidence. *See United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2015). Yet, "[t]he test for probable cause is not reducible to 'precise definition or quantification.'" *Florida v. Harris*, 568 U.S. 237, 243 (2013) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "Rather, a showing of probable cause requires only 'the kind of fair probability' on which 'reasonable and prudent people, not legal technicians, act.'" *United States v. Clayton*, 98 F.4th 256, 263 (5th Cir. 2024) (citing *Harris*, 568 U.S. at 244) (cleaned up). And at all times, "[t]he general touchstone

2

of reasonableness [] governs Fourth Amendment analysis." *United States v. Ramirez*, 523 U.S. 65, 71 (1998).

## ANALYSIS

This case comes down to two questions. *First*, did NRHPD officers have a valid warrant to search Rayos's home? *Second*, if not, did the officers act with "objectively reasonable good-faith reliance" on the putatively invalid warrant? Ordinarily, "[i]f the good-faith exception applies, we need not reach the question of probable cause." *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999). The inverse is logically true too, as courts need not address the exception if the contested warrant was based on probable cause. *See id.* Given the Parties' divergent positions on both issues, the Court nevertheless addresses both points here. In doing so, the Court follows the order of arguments from this morning's hearing, taking probable cause first and then proceeding to the good-faith exception.

### A. The Search Warrant Was Not Defective.

As noted, search warrants cannot issue without probable cause. *See Gant*, 556 U.S. at 338. Rayos says the search warrant here lacked probable cause, leaning on the Fourth Amendment's "particularity" requirement.[1] *See* ECF No. 18 at 5; *see generally* U.S. Const. amend. IV, § 2 (noting an affidavit supporting a warrant must "particularly describe[e] the place to be searched, and the persons or things to be seized"). To establish probable cause, an affiant seeking a warrant must describe the place to be searched "particularly," *see Kentucky v. King*, 563 U.S. 452, 459 (2011), and the warrant must "set out" the authorized search "with particularity." *Id.* (citing *Payton v. New York*, 445 U.S. 573, 584 (1980)). Simply put, the cops ask the magistrate if they can search

---

[1] This inquiry is distinct from (though related to) the "bare-bones" inquiry discussed below. *See infra* pp. 6–9. In the probable-cause context, a search warrant and supporting affidavit must be sufficiently particular. *See Leon*, 468 U.S. at 922. In the good-faith-exception context, officers cannot reasonably rely on a warrant based upon a "bare-bones" affidavit. *See United States v. Morton*, 46 F.4th 331, 336 (5th Cir. 2022). The former looks to the legal instrument itself, the latter looks to law enforcement's reliance on the instrument. While the analyses overlap, precedents approach the inquiries independently, applying slightly varying standards to each. *See id.*

a *particular* place for *particular* things; the magistrate then issues a *particular* warrant based on those representations.

Rayos addresses this point in greater detail than the Government. *See* ECF No. 18 at 5–6. For its part, the Government says "some things just speak for themselves," namely "finding a dead or dying person at three-thirty in the morning" lying prostrate on a bathroom floor. ECF No. 20 at 5. But taken alone, that wouldn't be enough. As Rayos's attorney noted in today's hearing, "dying isn't illegal." If probable cause existed every time someone died in their house, innumerable meritless searches could be justified. That isn't an outcome countenanced by the Court's Fourth Amendment jurisprudence.

Looking to the affidavit here, the affiant relayed the following information to Judge Bass:

- The type of residence and address thereof;
- The appearance of the residence;
- The vehicles parked in front of the residence;
- The purported occupants of the residence;
- The appearance of the purported occupants of the residence;
- The scene as it appeared when police arrived;
- The timing and circumstances of the medical distress call;
- The location of the deceased within the residence;
- The decedent's bizarre features (e.g., blue in the face with soaking wet hair);
- The fact that the deceased had previously been drinking; and
- The existence of "track marks" on the decedent, indicating likely use of illegal narcotics.

*See* ECF No. 20-1. This information suffices. Rayos takes issue with both the allegedly unparticular affidavit and the allegedly unparticular scope of the sanctioned search. *See* ECF No. 18 at 4–12. Neither argument persuades.

Consider first the affidavit itself. In assessing the affidavit based on a totality of the circumstances, the Court is mindful that "probable cause requires only 'the kind of fair probability' on which 'reasonable and prudent people, not legal technicians, act.'" *Clayton*, 98 F.4th at 263

(citing *Harris*, 568 U.S. at 244) (cleaned up). It was not unreasonable to issue a search warrant for the scene of E.G.'s death—a residence where police found a dead person in a bathroom who had previously been drinking and whose body showed clear indicia of illicit drug use. *See* ECF No. 20 at 3–6.

Rayos is right that death isn't a crime. He's also right that medical examiners, not police officers, inquire into a decedent's cause of death. *See* TEX. CODE CRIM. PROC. ANN. § 49.25(6). But use of illegal drugs is a crime, and the police are authorized to investigate it. Thus, while the affidavit did not cite to a statute regarding illegal drug use, a reasonable inquirer would interpret the affidavit as describing conditions of that crime "with particularity." *See United States v. Cherna*, 184 F.3d 403, 412–14 (5th Cir. 1999) (collecting cases); *United States v. Shugart*, 117 F.3d 838, 845–46 (5th Cir. 1997) (same).

The same is true for the resulting warrant. Rayos says Judge Bass signed off on a warrant that sanctioned sweeping searches unconstrained to the scene and cause of E.G.'s death. However, the warrant itself was not facially unparticular just because it encompassed vehicles (in which E.G. may have traveled that night) and the home (in which E.G. passed). *See Cherna*, 184 F.3d at 411–13. Rayos and H.R. happened upon E.G. in an unresponsive state; they had no way of knowing his movements within the residence before he was located in the bathroom. *See* ECF No. 20 at 1–2. Thus, the warrant's scope was calculated to find any evidence that could shed light on E.G.'s death, which was plausibly related to illegal drug use. *See id.* And that remains true where, as here, the search for evidence of *X* revealed evidence of *Y*.[2]

At the end of the day, Texas law does not require an explicit statutory reference; only "sufficient facts" that a "specific offense has been committed." TEX. CODE CRIM. PROC. ANN. § 18.01(c). And a report that police found a wet, blue-faced individual dying on a bathroom floor with

---

[2] Notably, the affidavit and resulting warrant did not reference the charges brought against Rayos, but rather illegal-use crimes potentially committed by E.G. However, the Supreme Court has consistently held that a search isn't unconstitutional "simply because, in the course of enforcing it, an inspecting officer may discover evidence of [other] crimes." *See New York v. Burger*, 482 U.S. 691, 717 (1987).

obvious indicia of illegal drug use constitutes "sufficient facts" that a drug-related offense occurred. Accordingly, the search warrant here was supported by probable cause. Having found probable cause for the warrant, the Court need not address the Parties' good-faith exception arguments. But the Court shares the fears of Rayos's counsel that blind application of the exception may undermine the Fourth Amendment's guarantees for the criminally accused. Accordingly, the Court explains below why the good-faith exception applies to this case.

### B. The Good Faith Exception Applies.

The exclusionary rule is most frequently justified in terms of deterrence. True, probative evidence of criminal conduct is often excluded if it was obtained illegally. *See United States v. Leon*, 468 U.S. 897, 919 (1984). But the benefit may outweigh that loss, as excluding illegally obtained evidence incentivizes proper police conduct. As the Supreme Court explained in *Leon*:

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused.

*Id.* (citations omitted). But "[w]here the official action was pursued in complete good faith, the deterrence rationale loses much of its force." *Id.* (cleaned up). "Therefore, if the officers obtained the evidence 'in objectively reasonable good-faith reliance upon a search warrant,' the evidence is admissible 'even though the affidavit on which the warrant was based was insufficient to establish probable cause.'" *U.S. v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992)).

The officers who searched Rayos's home on February 8 did so "in objectively reasonable good-faith reliance" upon their warrant. *See Satterwhite*, 980 F.2d at 320. Officers have "objectively reasonable good-faith reliance" that a warrant is valid "so long as the warrant is supported by more than a bare-bones affidavit." *United States v. Alix*, 86

F.3d 429, 435 (5th Cir. 1996). As explained above, *supra* pp. 3–6, the warrant here was based on sufficient information for a reasonable person to infer that a drug-related offense led to E.G.'s death. And the underlying affidavit was far from the "bare-bones" affidavit addressed in *United States v. Morton*, 46 F.4th 331 (5th Cir. 2022), a case to which both Parties appeal.

As the Government observes, *Morton* is an "anthological opinion" that meticulously details when an affidavit is so deficient that the good-faith exemption does not apply. *See* ECF No. 20 at 6. As the court noted in *Morton*, "bare-bones" affidavits "contain wholly conclusory statements" and "lack the facts and circumstances from which a magistrate can independently determine probable cause." *Morton*, 46 F.4th at 336 (quoting *Satterwhite*, 980 F.2d at 321). The Fifth Circuit explored numerous cases where the bare-bones exception precluded application of the good-faith exception. *See id.* at 337–40. The results were clear: for an affidavit to be so deficient that it precludes the good-faith exception, the instrument must so heavily rely on conclusory allegations rather than fact that it raises an inference of falsity (or a reckless disregard for truth). *See id.* As the court opined, "[a] look at some bare-bones affidavits from Supreme Court cases shows just how bare they are." *Id.* at 337. The warrant here is markedly less naked.

While best practices may warrant more detailed affidavits in the future, it cannot be said that the affidavit here contained "wholly conclusory statements" and lacked "the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* at 336. The affidavit communicated the "who, what, when, where, why, and how" of the relevant incident and outlined precisely what the police encountered in responding to H.R.'s call. *See* ECF No. 20-1. Although it didn't cite to drug offense statutes, it made clear that the circumstances gave rise to a strong presumption that illegal drug use was involved in E.G.'s death. *See id.* Thus, the NRHPD officers who searched Rayos's home pursuant to the resulting warrant acted reasonably under the circumstances. *See Cherna*, 184 F.3d at 412 ("The Fourth Amendment does not demand that the executing officers question [the magistrate's]

decision and determine for themselves whether the warrant is, in fact, valid.").

To be sure, the Fourth Amendment's guarantees are sacrosanct for criminal defendants. As such, those guarantees must be safeguarded from dilution by countless "exceptions" that are blindly applied without context. *See Morton*, 46 F.4th at 335–36. But it's also true that law enforcement is hard, investigations are time-sensitive, and "doubtful or marginal cases . . . should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965). While a rule with too many exceptions is no rule at all, this case is precisely why the good-faith exception exists. The Parties could argue all day about the "reasonableness" of acting on a shorter-than-typical warrant, but "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *Leon*, 468 U.S. at 922. NRHPD officers worked around the clock to get a warrant before Judge Bass at 7:00 a.m. after finding E.G.'s body at 4:00 a.m. As sleep-deprived Detective Brock still furnished a sufficiently particular affidavit, the Court is disinclined to hold his brevity against him. *See Morton*, 46 F.4th at 335. And the same rings true for officers who executed the resulting warrant.

Like all Fourth Amendment analyses, the good-faith exception calls for a reasonableness determination. *See Ramirez*, 523 U.S. at 71. Here, nothing suggests a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Morton*, 46 F.4th at 336 (citation omitted). The warrant and affixed affidavit clearly laid out the nature of the scene, the identities of the parties involved, and the facts leading officers to believe illegal drugs were implicated. *See* ECF No. 20-1. In executing the warrant, North Richland Hills' finest "took every step that could reasonably be expected of them." *Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984). Accordingly, the Court finds the good-faith exception extends to the February 8 search of Rayos's home by NRHPD officers.

## CONCLUSION

The Fourth Amendment recognizes that warrants from "a neutral and detached judicial officer" safeguard against improper searches more than "the hurried judgment" of police officers "engaged in the often competitive enterprise of ferreting out crime." *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326 (1979). Our nation's founders clearly recognized the danger of unclear, imprecise, unparticular, or generalized warrants.[3] Yet a robust corpus of jurisprudence specifies the contours of probable cause for a warrant, along with the circumstances in which officers may justifiably rely on imperfect warrants. *See id*. Here, for Rayos to prevail on his Motion to Suppress, he must carry the burden of proving the relevant evidence was obtained illegally. *Waldrop*, 404 F.3d at 368. As explained above, he fails to do so. Accordingly, the Court **DENIES** his Motion to Suppress. ECF No. 18.

**SO ORDERED** on this **30th day** of **May 2024.**

Mark T. Pittman
UNITED STATED DISTRICT JUDGE

---

[3] *See* James Otis, Against Writs of Assistance, 4 (1761), *in* NATIONAL CONSTITUTION CENTER, *Historic Documents Repository*, https://constitutioncenter.org/historic-document-library/james-otis-against-writs-of-assistance-february-24-1761 (opining that "a man's house is his castle; and while he is quiet, he is as well guarded as a prince in his castle" and observing that broadly applicable writs without particularized justification were "the zenith of arbitrary power" exercised by English monarchs).